UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| JEFFREY B. HOPPER, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 6: 05-08-DCR |
| ) | |
| V. ) | |
| ) | |
| ) | |
| CHARLES E. SAMUELS, JR., ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Respondent. ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Jeffrey B. Hopper, the *pro se* petitioner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 and paid the $5.00 filing fee. When the petitioner filed this proceeding on January 10, 2005, he was confined at the Federal Correctional Center in Manchester, Kentucky ("FCI- Manchester"). However, on April 1, 2005, the petitioner filed a notice of change of address, stating that his new address is "5829 Tower Road, Tallassee, Tennessee 37878." [Record No. 5]

This matter is before the Court for screening.[1] 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

RESPONDENT

The named respondent is Charles E. Samuels, Jr., Warden of FCI-Manchester.

CLAIMS

---

[1]   This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted

The petitioner claims that the respondent violated his due process rights under the Fifth Amendment of the United States Constitution. He alleges that the BOP wrongly construed 18 U.S.C. §§3621(b) and 3624(c) and denied him time to which he was entitled to spend either in a Community Corrections Center ("CCC") or home confinement. The petitioner alleges that the BOP's decisions (1) denying him pre-release into a CCC until June 13, 2005, and (2) denying him permission to proceed directly to home confinement violate the Administrative Procedure Act and the Ex Post Facto Clause.

ALLEGATIONS OF THE PETITION

The plaintiff states that he was convicted of manufacturing more than 100 marijuana plants in violation of 21 U.S.C. §841. On June 4, 2001, he received a sixty (60) month sentence in the United States District Court for the Eastern District of Tennessee. The respondent stated, in a December 13, 2004 "Response" to the petitioner's "Request for Administrative Remedy," that the petitioner's projected release date is August 30, 2005, and his pre-release preparation date was March 25, 2005. [*See* Record No. 4, Attachment.] The respondent also stated that March 25, 2005, was the petitioner's earliest date of eligibility for CCC placement. [*Id*.]

The petitioner sets forth two specific complaints in his initial petition [Record No. 1] and two supplemental memoranda [Record Nos. 3 and 4]. First, he complains that the BOP should have released him to a Knoxville area CCC on March 25, 2005 (his pre-release preparation date) instead of waiting until June 13, 2005. He alleges that, given a CCC release date of June 13, 2005, he would serve only about 80 days, or about 5%, of his sentence in a CCC, instead of one hundred fifty-nine days, or 10% of his sentence. [Record Nos. 3 and 4]

The petitioner cites *Colton v. Ashcroft*, 299 F. Supp.2d 681 (E. D. Ky. 2004) (Hon. Jennifer B. Coffman presiding), and numerous cases from other jurisdictions in support of his claim that he should have received 159 days in pre-release custody, instead of the 80 days which the BOP has awarded him. He alleges that the BOP had uniformly engaged in a practice whereby inmates were allowed only 60 days in a CCC, regardless of their actual "10%" date.

Next, the petitioner argues that he should have been allowed to by-pass being sent to a CCC and should instead be granted home confinement. He contends that under §3624(c) and the Bureau of Prisons ("BOP") Program Statement ("PS") 7310.04(5) and (7), the BOP had the authority to send him directly into home confinement. He states that his wife has become stricken with Multiple Sclerosis or Parkinson's Disease, that she cannot care for their children, and that she must rely on other people for transportation. He asserts that the denial of his requests would cause him irreparable damage and that he is entitled to emergency injunctive relief.

On December 13, 2004, the respondent denied the petitioner's request to bypass CCC custody and be sent directly into home confinement. In the denial of the petitioner's "Request for Administrative Remedy," the respondent noted that under PS 7320.01, the award of Direct Home Confinement was left to the discretion of a Community Corrections Manager ("CCM") and the probation officer, once an inmate is confined in a CCC.

The petitioner appealed the respondent's denial of his administrative remedy appeal seeking Direct Home Confinement in lieu of CCC placement. On January 6, 2005, K. M. White, Regional Director of the BOP's Mid-Atlantic Region, denied the petitioner's appeal of the respondent's decision. (*See* Record No. 4, Attachment, "Regional Administrative Remedy Appeal Part B-Response.") Director White stated that on December 27, 2004, FMC-Manchester staff submitted

the proper forms for the petitioner to be considered for Direct Home Confinement and/or CCC placement. White further agreed with the respondent's decisions that: (1) consideration for CCC placement is based upon available community resources, and (2) CCC placement and/or Direct Home Confinement is left to the discretion of appropriate CCM under the provisions of PS 7320.01.

It does not appear that the petitioner pursued the final appeal step with the BOP's Central Office. The petitioner did, however, file a "Notice" of Change of Address on April 1, 2005 [Record No. 5], indicating that his current address is "5829 Tower Road, Tallassee, Tennessee 37878."

## RELIEF REQUESTED

The petitioner seeks an emergency injunctive order directing the respondent to place him in home confinement on March 25, 2005, or, alternatively, placement in a CCC on that date.

## DISCUSSION
### 1. No Protected Liberty Interest in CCC Placement or in Home Confinement

Prior to December 20, 2002, under its old interpretation of 18 U.S.C. §3624(c), the BOP uniformly designated federal inmates in CCC's for the last 180 days (six months) of their sentences, even if that placement exceeded the last ten percent of their sentences. This policy was known as the "Six Month Policy." However, on December 13, 2002, the Department of Justice's Office of Legal Counsel ("OLC") issued a memorandum ("the OLC Memo") declaring that the Six Month Policy was "unlawful." The OLC Memo concluded that the BOP could not designate a CCC as a place of confinement pursuant to 18 U.S.C. §3621, because a CCC is not a "penal or correctional facility" within the meaning of the statute. The OLC Memo stated a change in the BOP's longstanding interpretation of 18 U.S.C. §3624(c) and its previous policy regarding inmates' placement in CCC's.

4

On December 20, 2002, the BOP's General Counsel issued a "Memorandum for Chief Executive Officers" entitled "Community Confinement Procedure Changes" ("the December 20, 2002 Memorandum"). Pursuant to the change effected in the December 20, 2002 Memorandum, pre-release into CCC designations became limited to the last 10 percent of the prison sentence, not to exceed six months ("the 10% Rule").

Under the circumstances presented, this Court must conclude that the petitioner has failed to state a claim upon which relief can be granted. First, state and federal prisoners generally enjoy no constitutional right to placement in a particular penal institution. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Brown-Bey v. United States*, 720 F.2d 467, 470 (7th Cir.1983). Thus, the Attorney General has the power to direct the place of a prisoner's confinement and the authority "to transfer federal prisoners from one place of confinement to another at any time for any reason whatsoever or for no reason at all." *Brown-Bey*, 720 F.2d at 470.

Second, nothing in §3624 requires or mandates the BOP to place any federal prisoner in a CCC for the final 10% of his sentence.[2] The language merely *authorizes* the BOP to allow CCC placement "for a *reasonable part* . . . of the last ten percentum of the term." (Emphasis Added)

Third, courts have rejected the claim that §3624(c) creates a protected due process liberty interest and have held that the statute does not encroach upon the BOP's broad discretion and

---

2  Title 18 U.S.C. §3624(c) states, in part, as follows:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, *not to exceed six months*, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

*Id*. (Emphasis added.)

authority to determine where prisoners may be confined during the prerelease period. *United States v. Sneed*, 63 F.3d 381, 389 n.6 (5th Cir. 1995); *Prows v. Fed. Bureau of Prisons*, 981 F.2d 466, 469-70 (10th Cir.1992), *cert. denied*, 510 U.S. 830 (1993); *see also United States v. Laughlin*, 933 F.2d 786, 789 (9th Cir.1991) ("Nothing in the language of section 3624(c) mandates that all prisoners pass through a community treatment center en route to free society.") This Court agrees with the conclusions reached in these cases.

While §3624 does employ mandatory language, it relates only to a general guideline to facilitate the prisoner's post-release adjustment through the establishment of some unspecified pre-release conditions. *Prows*, 981 F.2d at 469. Such interpretation is clearly consistent with the broad administrative discretion delegated to the BOP regarding the placement of prisoners. *Brown-Bey v. United States*, 720 F.2d 467, 470 (7th Cir.1983); *Ready v. Fleming*, 2002 WL 1610584, *3 (N. D. Tex. 2002) ("Thus, §3624(c) does not create a constitutionally protected liberty interest, and Ready's halfway-house-placement claim must fail.")

In *Gambino v. Gerlinski*, 96 F.Supp.2d 456, 459-60 (M.D. Pa. 2000), *aff'd*, 216 F.3d 1075 (3rd Cir. 2000) (unpublished table opinion), the petitioner argued that 18 U.S.C. §3624(c) required the BOP to provide him with some amount of time, during the last ten percent of his sentence, in pre-release confinement (*e.g.*, a halfway house or home confinement). The *Gambino* court, citing and relying on *Prows*, concluded that §3624(c) does not create a liberty interest because it "refers to no [mandatory] procedures. It is instead a broadly worded statute setting forth a general policy to guide the prison system." *Id.* at 460 (citing *Badea v. Cox*, 931 F.2d 573, 576 (9th Cir.1991)). The court determined that Gambino had failed to state a claim for relief because he had failed to show that his confinement was in violation of the Constitution or any federal law.

6

The Southern District of New York has also held that federal prisoners have no constitutionally-protected right to a specific amount of time in CCC placement. *See Distefano v. Federal Bureau of Prisons*, 2004 WL 26999, *4 (S. D. N. Y. March 4, 2004) (writ of mandamus issued under 28 U.S.C. §1651 compelling the Warden of FCI-Otisville to act promptly and in good faith to *consider* Distefano for placement in a CCC consistent with the BOP's policy prior to December 2002). The court qualified that ruling, however, by stating as follows:

> "This 'ruling does not *require* the Bureau to grant petitioner's request for [CCC] designation, *but only to give that request full and fair consideration.*' McCarthy [*v. Doe* 146 F.3d 118, 122-23 (2d Cir. 1998)] . . . . Because Distefano would become eligible for CCC placement on March 13, 2004 under the prior policy, the BOP is directed to *consider* him for placement by that date."

*Distefano*, 2004 WL 396999, at *6 (Emphasis added). *See also Knish v. Stine*, 347 F.Supp.2d 682, 688 (D. Minn. Nov. 24, 2004) (Knish was not entitled to CCC placement for any particular period of time; proper relief was not to direct Knish's transfer to a CCC, but was instead to direct the BOP to *consider* Knish's transfer to a CCC, using BOP's pre-December 2002 policy considerations).

Further, the petitioner claim that the BOP's decisions relating to CCC placement and home confinement violates the Ex Post Facto Clause is also without merit. Laws, policies, and other actions may violate the Ex Post Facto Clause if they punish behavior not illegal at the time it was committed, or increase punishment beyond that which was authorized at the time of the offense. *Garner v. Jones*, 529 U.S. 244, 249-50 (2000). The Ex Post Facto clause is implicated where a law punishes retrospectively: "[a] law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" *Miller v. Florida*, 482 U.S. 423, 430 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 31, (1981)).

7

The BOP's policy change in 2002 changed only the permissible length of CCC and/or in-home confinement, not a prisoner's eligibility for in-home confinement. As the petitioner has never been approved for in-home confinement, the length of his in-home confinement is not an issue. In addition, the OLC Memo was authored in December of 2002. As the respondent correctly noted, the issue of whether a federal inmate is a candidate for in-home confinement is left to the discretion of a CCM. According to the respondent, the petitioner's earliest date of eligibility for CCC placement was March 25, 2005. Thus, the OLC Memo was not retroactively applied to the petitioner, who could not have been considered for in-home confinement by a CCM until March 25, 2005, which was over two years *after* the implementation of the OLC Memo.

Accordingly, the petitioner does not enjoy a constitutionally-protected liberty interest in early release on a date certain into either a CCC or home confinement. The term of placement in a CCC is left strictly to the discretion of the BOP. Likewise, the placement of an inmate into home confinement is left to the discretion of the BOP, through the decision of a CCM.

2. Injunctive Relief Request Moot

As previously noted, on April 1, 2005, the petitioner filed a notice of change of address, stating that his new address is " 5829 Tower Road, Tallassee, Tennessee 37878." [Record No. 5] It is unclear whether this address is the petitioner's CCC address or his home address. Regardless, it appears that the petitioner has in fact been transferred out of FCI-Manchester and, at the least, into a CCC. Thus, his request for injunctive relief will be denied as moot.

The law is clear that an inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due to the inmate-plaintiff's release from confinement, or transfer to another facility. *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999); *Green v. Branson*,

108 F.3d 1296 (10th Cir. 1997); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Magee v. Waters,* 810 F.2d 451, 452 (4th Cir. 1987) (prisoner's transfer moots his request for injunctive relief against conditions of confinement in facility from which he was transferred.); *McKinnon v. Talladega County, Alabama*, 745 F.2d 1360, 1362 (11th Cir. 1984) (Inmates' transfer or release from jail mooted claims for declaratory and injunctive relief); *Booth v. Barton County*, 157 F. Supp. 2d 1178, 1183 (D. Kan. 2001) (Two plaintiffs' release from jail mooted their claims for injunctive relief).

## CONCLUSION

Accordingly, being sufficiently advised, it is hereby **ORDERED** as follows:

1. The petitioner's request for injunctive relief is **DENIED**.

2. This action is **DISMISSED**, *sua sponte*, with prejudice. A corresponding Judgment in the Defendant's favor shall be entered this date.

3. The Court further concludes that any appeal would not be taken in good faith. 28 U.S.C. §1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

This 28th day of April, 2005.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

9